**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Y. Vasquez; and Cindy Garza, for and on behalf of her minor son, Santana Torres Vasquez,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Phoenix; Daniel Jones, individually and in his official capacity as a police officer for the City of Phoenix; Jane Doe Jones; Mark T. Kincannon, individually and in his official capacity as a police officer for the City of Phoenix; and Jane Doe Kincannon,<br><br>Defendants. | No. CV-04-481-PHX-DGC<br>No. CV-05-608-PHX-DGC<br>(Consolidated Cases)<br><br>**ORDER** |

Defendants have filed Motion in Limine No. 7 to Preclude Plaintiff's Expert Robert Anderson from Testifying at Trial. Dkt. #212. Plaintiff Manuel Vasquez has filed a response. Dkt. #226. The parties' briefs largely incorporate previous briefing filed in this case. *See* Dkt. ##121, 138, 146.

The Court held an evidentiary hearing on September 27, 2006, and heard testimony from Mr. Anderson and defense expert Joseph D. Peles, Ph.D. The Court reviewed the expert report submitted by Mr. Anderson, two expert reports submitted by Dr. Peles, deposition testimony from Mr. Anderson, a number of exhibits received in evidence during the hearing, videotapes of Mr. Anderson's disputed test, and the parties' briefs.

1    The Court will deny Defendants' motion. The Court concludes that Mr. Anderson's
2 expert testimony is admissible because it will assist the jury in determining a fact in issue;
3 Mr. Anderson is qualified by knowledge, experience, and education to testify on the subject
4 of his report; and Mr. Anderson's testimony is based on sufficient facts or data, is the product
5 of reliable principles and methods, and is the result of his application of these principles and
6 methods reliably to the facts of this case. Fed. R. Ev. 702.

7 **A.    Findings**.

8    1.    Mr. Anderson received his Masters and Bachelor's degrees from Arizona State
9 University in Bio-Engineering, with an emphasis in biomechanics.

10   2.    Mr. Anderson has worked for 15 years in biomechanical engineering.

11   3.    Mr. Anderson has performed or participated in more than 40 research projects
12 evaluating biomechanical issues such as the effects on the human body of car accidents.

13   4.    Mr. Anderson has appeared as an expert witness in more than 100 cases,
14 testifying for both plaintiffs and defendants on a number of biomechanical issues.

15   5.    Mr. Anderson evaluated the possible effects of Plaintiff's alleged 12-inch drop
16 onto soft dirt by dropping a biomechanical head onto both hard and soft surfaces from
17 heights of 12 inches and 24 inches.

18   6.    Mr. Anderson used a Hybrid III head form. This head form is generally used
19 in the biomechanical industry to evaluate impacts on the human head.

20   7.    Mr. Anderson instrumented the head form with both linear and rotational
21 accelerometers which are generally used in the biomechanical industry.

22   8.    Data from the accelerometers was collected and retrieved through Diversified
23 Technical Systems' TBAS system. The equipment, data processing, and summarizing of the
24 data were provided by Biomechanical Research & Testing, an independent company.

25   9.    Plaintiff's diffuse axonal injury ("DAI") was classified by Mr. Anderson as a
26 level 5 on the Abbreviated Injury Scale ("AIS"). This scale is generally accepted in
27 biomechanical analysis. Defendants' expert, Dr. Peles, likewise rated Plaintiff's DAI as a
28 level 5 on the AIS.

10. Mr. Anderson used the Head Injury Criteria ("HIC") to evaluate the chances that an AIS 5 injury could result from various force levels. Mr. Anderson concluded that events producing an HIC of 650 or less could fairly be judged as having zero risk of an AIS 5 injury. Defendants do not dispute his use of the HIC.

11. To evaluate rotational accelerations, Mr. Anderson relied on an instrumented study using volunteer boxers, and concluded that rotational forces below 13,600 to 16,000 rad/sec$^2$ would be judged unlikely to produce an AIS 5 injury.

12. Using these criteria and the Hybrid III head form and accelerometers, Mr. Anderson conducted a series of "drop tests," dropping the hydroform head onto soft dirt, gravel, and asphalt. The head was dropped from heights of 12 and 24 inches. The drops onto gravel and soft dirt failed to produce the forces Mr. Anderson deemed necessary, applying the HIC and boxing data, to produce an AIS 5 injury like that experienced by Plaintiff Manuel Vasquez.

**B.   Analysis**

Applying the three general categories of criteria identified in Rule 702, the Court concludes that Mr. Anderson's analysis and testimony should not be excluded.

First, the Court concludes that Mr. Anderson's testimony will assist the jury in determining a fact in issue – whether a 12-inch drop onto soft dirt, as described by the officers, could have produced the brain injuries suffered by Plaintiff.

Second, the Court concludes that Mr. Anderson's two degrees, 15 years of work experience, 40-plus research projects, and numerous expert witness appearances provide him with the knowledge, experience, and education to testify on biomechanical issues such as those at issue in this case.

Third, the Court concludes (a) that Mr. Anderson's testimony is based on sufficient facts or data, (b) that the testimony is the product of generally reliable principles and methods, and (c) that Mr. Anderson has applied the principles and methods reliably to the facts of this case.

///

### a. Mr. Anderson's testimony is based on sufficient facts or data.

Mr. Anderson relied on the officers' description of Plaintiff's fall to the ground. Mr. Anderson visited the site of Plaintiff's arrest and performed the head drop test on soils similar to those described by the officers. He dropped the head from 12 inches (the height identified by the officers) and from 24 inches (to account for any additional acceleration that might have resulted from Plaintiff's "flailing" as described in the officer's reports). He collected data from a hydroform head generally used in the biomechanical industry, using accelerometers also used in the industry, with software used in the biomechanical industry.

### b. The testimony is the product of generally reliable principles and methods.

As noted above, Mr. Anderson used standard industry equipment to measure the forces at work in a 12- and 24-inch drop. The use of this standard equipment, and Mr. Anderson's experience, persuade the Court that his methods are sufficiently reliable to satisfy Rule 702. Defendants' expert argues that Mr. Anderson's methods are unreliable because he used an unattached head form, failing to attach the form to a neck and torso that could replicate the forces present when Mr. Vasquez was dropped by the officers. The Court concludes that this criticism goes to the weight, rather than the admissibility, of Mr. Anderson's opinions. The Court reaches the same conclusion with respect to the other criticisms by Dr. Peles, such as the fact that Mr. Anderson's experiment measured primarily linear acceleration, not the rotational acceleration that resulted in Plaintiff's head injuries, and that Mr. Anderson allegedly misunderstood the nature of Plaintiff's brain injuries.

### c. Mr. Anderson applied the principles and methods reliably.

Mr. Anderson readily admits that he did not attempt to replicate Plaintiff Vasquez's fall to the ground. Rather, he sought to conduct an experiment measuring the forces that would result from a 12-inch drop onto soft dirt. In doing so, he used equipment generally relied upon in the biomechanical field and conducted the experiment at the site of the injury, on soft dirt, and from a height as described by the officers. He collected data with both linear and rotational accelerometers, analyzed the data through computer instruments, and reached conclusions based on standard criteria such as the AIS and HIC. He did not fail to connect

his experiments to the essential facts of the case.

**C.     Conclusion.**

The Court fully understands that Defendants and their expert think Mr. Anderson's analysis is flawed, and the jury may well agree. But this is not a case where the expert's opinions are so unreliable or irrelevant that they should be excluded from trial in an exercise of the Court's gatekeeping function. Considering the factors set forth in Rule 702 and the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court concludes that Mr. Anderson's opinions are sufficiently reliable and relevant to be admitted in evidence and considered by the jury. Defendants will have a full opportunity at trial to criticize his tests and opinions. Dr. Peles will explain to the jury why he views the Anderson experiment and analysis as unreliable, and in doing so will likely use the illustrations and explanations provided at the evidentiary hearing. The jurors should be permitted to hear from both experts and draw their own conclusions concerning the credibility of Mr. Anderson's opinion.

**IT IS ORDERED** that Defendants' Motion in Limine No. 7 to Preclude Plaintiff's Expert Robert Anderson from Testifying at Trial (Dkt. #212) is **denied**.

DATED this 29th day of September, 2006.

_____
David G. Campbell
United States District Judge